**ALSTON & BIRD LLP**
Martin G. Bunin
90 Park Avenue
New York, NY 10016
(P) 212-210-9400
(F) 212-210-9444

William S. Sugden
Jonathan T. Edwards
1201 W. Peachtree St.
Atlanta, Georgia 30309-3424
(P) 404-881-7000
(F) 404-253-8235

*Attorneys for Petitioners, Hadley J. Chilton and*
*John J. Greenwood, in their capacities as Joint*
*Liquidators for Tranen Capital Alternative*
*Investment Fund Ltd. (in liquidation)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 15 |
| TRANEN CAPITAL ALTERNATIVE ) | |
| INVESTMENT FUND LTD. (IN LIQUIDATION), ) | Case No. 15-12620 |
| ) | |
| Debtor in a Foreign Proceeding. ) | |
| ) | |

**VERIFIED PETITION FOR ORDER RECOGNIZING FOREIGN MAIN**
**PROCEEDING AND GRANTING ADDITIONAL RELIEF AND**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

Hadley J. Chilton and John J. Greenwood of Baker Tilly (BVI) Limited, in their

capacities as Joint Liquidators (the "***Petitioners***") for Tranen Capital Alternative Investment

Fund Ltd. (in liquidation) (the "***Debtor***"), respectfully file an official form petition and this

verified petition (together, the "***Petition***") for an order in the form attached hereto as Exhibit A,

recognizing the winding up and liquidation of the Debtor (the "***BVI Proceeding***"), as authorized

by the Order entered July 11, 2014 (the "***Winding-up Order***")[1] entered by the Eastern Caribbean Supreme Court in the High Court of Justice (the "***BVI Court***") in the British Virgin Islands (the "***BVI***"), as a foreign main proceeding under section 1517 of title 11 of the United States Code (the "***Bankruptcy Code***") and granting certain additional relief under section 1521 of the Bankruptcy Code.

## I.    JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter under 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

2.      This case has been properly commenced under section 1504 of the Bankruptcy Code by filing the Petition in accordance with section 1515 of the Bankruptcy Code.

3.      As further set forth in the Declaration of Hadley J. Chilton in Support of Petition for Order Recognizing Foreign Main Proceeding (the "***Chilton Declaration***"), which is filed contemporaneously with this Petition and incorporated herein, the Petitioners have reason to believe that Debtor has assets in this district, including interests in certain lapsed insurance policies issued by U.S. life insurance companies.  The Debtor also operated its business in this district and is subject to actions pending in this district.  Venue is therefore proper under 28 U.S.C. § 1410.  *See* Chilton Declaration at 2–3.

4.      The statutory predicates for relief are sections 1504, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

---

[1]      A true and correct copy of the Winding-up Order is attached as Exhibit A to the Chilton Declaration (defined below).

## II.    BACKGROUND

### A.    The Debtor's Business

5.      Before being placed into liquidation in the BVI, the Debtor purportedly transacted and invested in the secondary life insurance market.  As further set forth in the Chilton Declaration, the Debtor was formed on February 6, 2008 under the BVI Business Companies Act, 2004, as a limited BVI corporation with its principal place of business in the BVI.  The Debtor was organized as a mutual fund under the BVI Mutual Funds Act of 1996 and is regulated by the Financial Services Commission ("**FSC**") in the BVI.  Tranen Capital, Ltd., also a limited BVI corporation (the "***Investment Manager***"), managed the Debtor and its investments.

6.      Both the Debtor and its Investment Manager are BVI companies.  The Debtor's and the Investment Manager's registered office and address is at P.O. Box 961, 30 De Castro Street, Road Town, Tortola, British Virgin Islands.  The Debtor's legal counsel was Maples and Calder located in the BVI.

7.      The Petitioners believe that the Debtor conducted its U.S. operations out of New York, specifically, 245 Park Avenue, Suite 3900, New York, NY 10167.  This location is allegedly where Mr. Karl Anderson, who the Petitioners believe was the Chief Investment Analyst of the Investment Manager, conducted substantial business on behalf of the Debtor.

8.      According to the Debtor's records, its strategy was to selectively buy high quality but unwanted or unneeded life insurance policies issued by U.S. life insurance companies from seniors and then either (x) sell the policies to institutional purchasers such as banks, pension funds, or hedge funds or (y) hold the best policies until maturity and then collect the death benefit.  In short, the Debtor was established to trade in the life settlements market.

9.      A life settlement transaction usually involves a third party purchasing the legal ownership of and the beneficial interest (that is, the death benefit) in an in-force life insurance policy.  These transactions are intended to provide a policy owner the opportunity to sell the policy to third party purchasers, such as the Debtor, for more money than would be received upon surrender of the policy at that time.

10.     Unless contracted or agreed otherwise, the purchaser becomes the new legal owner of the policy and therefore can: (a) retain the policy, pay the monthly premiums, and receive the death benefit; or (b) resell the policy on the secondary market for a higher purchase price, thus earning a return on invested funds.

11.     The Debtor has approximately 200 investors with approximately $184,000,000 of invested capital.  The Debtor also has approximately 23 U.S.-based creditors.

**B.      Events Leading to the Commencement of the BVI Proceeding**

12.     The Debtor, its Investment Manager, Kenneth A. Langaard and Arthur L. Bowen (Langaard and Bowen being former directors of the Debtor and its Investment Manager), and certain service providers to the Debtor and related parties, including Karl and Alex Andersen, Brock Bagley, Randy Bagley, Donald Trudeau, and the Leo Group LLC, have been and are parties to various lawsuits in the U.S., alleging a variety of irregularities in connection with the Debtor, its management, and its affairs.

13.     These lawsuits include: (i) *Stavanger Holdings Ltd. et al. v. Tranen Capital Alternative Investment Fund Ltd. et al.*, No. 12-cv-646 (S.D. Ind. May 11, 2012) (the "***Stavanger Litigation***"); (ii) *Longterm Partners Inc. v. Tranen Capital Alternative Investment Fund Ltd.*, No. 12-cv-1624 (D. Conn. Nov. 15, 2012) (the "***Longterm Partners Litigation***"); (iii) *Arent Fox LLP v. Tranen Capital Ltd.*, No. 11-cv-7591 (D.N.J. Dec. 3, 2013) (the "***Arent N.J. Litigation***");

- 4 -

(iv) *Tranen Capital Alternative Investment Fund Ltd. v. Sovereign Bank et al.*, No. 11-cv-7591 (D.N.J. Dec. 29, 2011) (the "**Sovereign Bank Litigation**"); (v) *Arent Fox LLP v. Tranen Capital Ltd.*, No. 13-cv-6126 (S.D.N.Y. Aug. 30, 2013) (the "**Arent N.Y. Litigation**"); (vi) *McWealth Management v. Landgaard et al.*, No. 13-cv-2564 (D. Minn. Sept. 18, 2013) (the "**McWealth Litigation**"); (vii) *Richard W. Barry, as Chapter 11 Trustee for the estates of Liberty State Benefits of Delaware Inc., et al. v. Tranen Capital Alternative Investment Fund Ltd. et al.*, No. 11-53420 (Bankr. D. Del. Oct. 17, 2011) (the "**Barry Litigation**"); (viii) *Vision En Analisis Y Estrategia S.A. D.E. C.V. v. Karl Anderson, et al.*, No. 14-cv-08016 (S.D.N.Y. Nov. 13, 2014) (the "**Vision Litigation**"); (ix) *Tranen Capital Alternative Investment Fund, Ltd. v. Andrew Alberti*, Summons with Notice filed on May 29, 2015 in the Supreme Court of the State of New York, County of Westchester (the "**Alberti Litigation**"); and (x) *Britannia v. Tranen Capital Alternative Investment Fund Ltd. et al.*, No. 15-cv-3648 (S.D.N.Y. May 11, 2015) (the "**Britannia Litigation**," together with the Stavanger Litigation, Longterm Partners Litigation, Arent N.J. Litigation, Sovereign Bank Litigation, Arent N.Y. Litigation, McWealth Litigation, Barry Litigation, Vision Litigation, and the Alberti Litigation, the "**Litigation**"). The Debtor is named as a party in some, but not all, of these civil actions.

14.    In certain of these lawsuits, the plaintiffs allege that the Debtor depended on a fraudulent scheme to generate its cash flows and that the directors and certain service providers to the Debtor misappropriated and made personal use of the invested funds rather than applying such funds for investment purposes.

15.    Indeed, certain investors have alleged that the directors and managers of the Debtor, including the Investment Manager and other insiders, used the invested funds, proceeds, and death benefits to, among other things: (a) purchase real estate for their personal benefit; (b)

purchase luxury automobiles for their personal benefit; (c) purchase or lease a private aircraft; and (d) otherwise lead lavish lifestyles, including taking luxurious international vacations.

16.    And according to a 2013 KPMG audit, the Debtor's management team allegedly: (a) redeemed their own shares while postponing or delaying redemption requests from investors; (b) loaned themselves money from the Debtor's assets; (c) could not account for a $10,000,000 receivable; (d) made a "loan to affiliate" of $16,000,000; and (e) caused multiple policies to lapse, which materially harmed the Debtor and its assets.

17.    In or around the early part of 2012, the Debtor's investors began questioning the Debtor's operations, its use of invested funds, and the strength and quality of its assets.  This questioning began because the Debtor started denying or delaying investors' redemption requests, citing liquidity concerns.  In or around July 2012, the Debtor ceased making premium payments on policies it then owned, causing those policies to lapse.  Around the same time, Mr. Anderson and his company, Stavanger, parted ways with the Debtor and its Investment Advisor and later sued the Debtor and Investment Advisor for allegedly earned but unpaid commissions. *See generally* Stavanger Litigation.

18.    On May 30, 2013, the Debtor officially announced that its board of directors had determined to suspend the payment of redemptions, citing: (1) a large number of redemption requests received over a short period; (2) difficulty in quickly selling insurance policies without adverse consequences to the Debtor's assets; and (3) the resulting delay of cash flow due to the theft of a death benefit due the Debtor.  The Debtor's board of directors also immediately suspended trading on the Irish Stock Exchange.

19.    Pursuant to an order of the United States District Court for the Southern District of Indiana, entered in the Stavanger Litigation on or around January 15, 2014, a settlement

agreement against the Debtor and related parties was approved, and control of the Debtor was transferred to an independent recovery company, Delta Group Limited ("*Delta*").[2] Because of that appointment, Delta engaged with certain service providers to the Debtor to obtain the Debtor's books and records and allow forensic analysis to be undertaken.  That forensic analysis indicated that the Debtor was insolvent and that a liquidator should be appointed.

20.    Thereafter, on July 4, 2014, the Debtor filed an application with the BVI Court to appoint the Petitioners, which the BVI Court granted in the Winding-up Order.  Per the Winding-up Order, the Petitioners have all the powers set forth in Section 186 and Schedule 2 of the Insolvency Act 2003 (as amended, the "*Act*"), including other enumerated powers set forth in the Winding-up Order such as the "power to commence, continue, discontinue or defend any action or other legal proceedings in the name of and on behalf of the [Debtor]."  Winding-up Order § 3.

21.    The liquidation of the Debtor is governed by the Act and is being overseen by the BVI Court.  The Petitioners are officers of the BVI Court and, since the entry of the Winding-up Order, are agents of the Debtor.

### C.    The Chapter 15 Proceeding

22.    The BVI Proceedings are of universal effect and are designed to provide the most efficient and equitable mechanism for recovering the Debtor's assets and prosecuting appropriate litigation to increase the liquidation estate for the benefit of creditors and investors.  Parties holding the Debtor's property are required, by BVI law, to deliver the Debtor's property to the Petitioners and to otherwise comply with the Petitioners' requests for information regarding the Debtor.  The object of the Winding-up Order in dealing with an international insolvency is to ensure, insofar as it properly can, that the worldwide assets of the Debtor and the worldwide

---

[2]    1,000 Class A Management Shares were transferred from Kenneth Landgaard via a stock transfer form on January 15, 2014.

claimants to those assets are treated on a common basis. BVI law prescribes a statutory scheme to distribute the Debtor's assets which, the Petitioners understand, is similar to the distribution priorities under U.S. law. Among other things, under BVI law, a secured creditor is generally entitled to realize upon the property in which it has a security interest and unsecured creditors are entitled to a distribution of the Debtor's remaining property, after payment of expenses of the liquidation, on a ratable basis. Thereafter, shareholders and other contributories are entitled to the residue of any remaining assets. Furthermore, the Petitioners are charged with examining and adjudicating claims that are filed against the Debtor and act as agents of the BVI Court for these purposes and are supervised in their activities by the BVI Court.

23.    The need for recognition under chapter 15 of the Bankruptcy Code is clear. Based upon investigation to date, the Petitioners believe the Debtor may have claims against numerous U.S. persons, including the Debtor's directors, managers, and certain service providers located in the U.S. arising from material irregularities in relation to the Debtor, its management, and its affairs, including certain of the claims and allegations identified in the Litigation. Certain parties, including parties located in the United State, have not, to date, been fully cooperative in providing documents and other information to the Petitioners regarding the Debtor's pre-liquidation conduct. Therefore, recognition of the BVI Proceedings will provide the Petitioners with an ability to compel U.S. parties to cooperate with their investigation in a U.S. court. Additionally, the Petitioners understand that certain statutes of limitations and other applicable deadlines may be tolled pursuant to section 108 of the Bankruptcy Code. This tolling will afford the Petitioners an opportunity to conclude their investigations and properly and timely assert claims against third parties who may have engaged in wrongful conduct against the Debtor.

24.     Additionally, the Debtor is also the owner, directly or indirectly, of certain lapsed insurance policies, which the Petitioners may be able to revive under applicable law. According to the Debtor's private placement memorandum, many, if not all, of these policies are issued by U.S. life insurance companies. For these reasons, recognition of the BVI Proceeding under chapter 15 of the Bankruptcy Code is appropriate.

25.     Further, it is appropriate to recognize the BVI Proceedings as "foreign main proceedings." The Debtor's center of main interests ("*COMI*") is the BVI. Both the Debtor and its Investment Manager are BVI companies. The Debtor's and the Investment Manager's registered office is at P.O. Box 961, 30 De Castro Street, Road Town, Tortola, British Virgin Islands. The Debtor's legal counsel, prior to being placed into liquidation, was Maples and Calder located in the BVI. The Debtor is governed by the BVI Mutual Funds Act of 1996 and is therefore regulated by the FSC in the BVI.

26.     Similarly, the liquidation of the Debtor is governed by the BVI Insolvency Act 2003 (as amended) and is being overseen by the BVI Court. The distribution of the Debtor's assets will therefore be governed by BVI law and the BVI Court. And the law applicable to most disputes is likely BVI law. Additionally, since the commencement of the BVI Proceeding, the Petitioners, located in the BVI, have managed the Debtor, the Debtor's accounting is conducted in the BVI under the Petitioners' supervision, and the Debtor's accounts are located in the BVI. Thus, while the Debtor's investors are global in scope, including investors in Asia, the United States, Mexico, and Europe, the center of the Debtor's activities during its liquidation, including the collection and distribution of the Debtor's assets and resolution of claims against the Debtor.

27.     Recognition as a foreign main proceeding will also provide certain important additional benefits. As set forth above, the Debtor has been named as a defendant in various

lawsuits. Upon recognition as a foreign main proceeding, the Debtor will benefit from the breathing spell afforded by the automatic stay and will allow the Petitioners time to liquidate the Debtor's assets for the benefit of all its stakeholders.

28.     Finally, recognizing the BVI Proceeding as a foreign main proceeding is consistent with the purposes of chapter 15 of the Bankruptcy Code and the public policy of the U.S. Thus, the relief requested in the Petition is in the best interests of the Debtor, its creditors, investors, and other parties in interest.

## III.     <u>RELIEF REQUESTED</u>

29.     The Petitioners respectfully request an order, substantially in the form attached hereto as <u>Exhibit A</u>:

(a)     recognizing the BVI Proceeding, under section 1517 of the Bankruptcy Code, as a "foreign main proceeding," as such term is defined in section 1502(4) of the Bankruptcy Code;

(b)     granting relief automatically and as of right upon recognition of the BVI Proceeding as a foreign main proceeding under section 1520(a) of the Bankruptcy Code;

(c)     granting certain additional relief pursuant to section 1521(a) of the Bankruptcy Code, including an injunction prohibiting all persons and entities, other than the Petitioners and their representatives, attorneys, and agents, from: (i) commencing or continuing an action or proceeding concerning the Debtor's assets, rights, obligations, or liabilities; (ii) executing against any of the Debtor's assets; (iii) taking or continuing any act to create, perfect, or enforce a lien or other security interest, setoff, or other claim against the Debtor or its property; (iv) transferring, relinquishing, or disposing of any property of the Debtor to any person or entity other than the Petitioners; or (v) declaring or considering the commencement of the BVI Proceeding or the Debtor's chapter 15 case a default under any agreement, contract, or arrangement;

(d)     in accordance with section 1521(4), providing for the examination of witnesses (including any and all parties or persons subject to examination under F.R.B.P. 2004), the taking of evidence or the delivery of information concerning the Debtor's assets, affairs, rights, obligations, or liabilities;

(e)     in accordance with sections 1521(a)(5) and (b) of the Bankruptcy Code, entrusting the administration, realization, and distribution of the Debtor's assets located in the territorial jurisdiction of the United States to the Petitioners; and

(f)    awarding the Petitioners such other relief as this Court may deem just and proper.

## IV.    BASIS FOR RELIEF REQUESTED

### A.    All Requirements for Recognition Under Section 1517(a) Are Satisfied.

30.    Section 1517 of the Bankruptcy Code lays out a two-step process for granting recognition to a foreign proceeding:

- *First*, section 1517(a) of the Bankruptcy Code provides that "an order recognizing a foreign proceeding shall be entered if . . . (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a).

- *Second*, section 1517(b) of the Bankruptcy Code provides that a foreign proceeding "shall be recognized . . . (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests [("***COMI***")]." 11 U.S.C. § 1517(b)(1).

All requirements for recognition of the BVI Proceeding as a foreign main proceeding are satisfied here. 11 U.S.C. § 1502(4).

### i.    The BVI Proceeding Is a Foreign Main Proceeding.

#### a.    The BVI Proceeding Satisfies the Requirements of Section 101(23).

31.    Section 101(23) of the Bankruptcy Code defines "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country . . . under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23). The BVI Proceeding satisfies this definition for three

reasons.

32.    *First*, the BVI Proceeding is a "collective judicial proceeding" because, under the

Act, the Petitioners have the power to pay claims, compromise with creditors, continue and

defend any action or legal proceeding in the name of the Debtor, carry on the business of the

Debtor as may be necessary for its beneficial liquidation, and sell or dispose of the Debtor's

property, among other powers.  *See* Winding-up Order § 3; Insolvency Act 2003 §§ 185–86.

These powers demonstrate that a chief purpose of the BVI Proceeding is resolving and

determining the rights of all claimants and stakeholders; therefore, the BVI Proceeding is a

collective judicial proceeding.

33.    *Second*, the Act is a "law relating to insolvency or adjustment of debt" because it

requires the Petitioners to take possession of Debtor's assets and distribute the assets or proceeds

in accordance with the Act's priority scheme.  Insolvency Act 2003 § 185.  The Act describes

itself as an "Act to reform the law relating to the insolvency of companies. . . ."  Act at 22.  The

Winding-up Order also grants the Petitioners with the power to resolve claims and propose a

compromise or scheme of arrangement to make distributions to creditors.  *See* Winding-up Order

§ 3; Act § 186, Schedule 2.

34.    *Third*, the BVI Proceeding is subject to "control or supervision by a foreign

court."  The Debtor applied to the BVI Court to wind up and liquidate the Debtor, and the BVI

Court entered the Winding-up Order, thereby authorizing and empowering the Petitioners to take

control of the Debtor, subject to the BVI Court's supervision.[3]  *See* Winding-up Order.

---

[3] The Bankruptcy Code broadly defines "foreign court."  11 U.S.C. § 1502(3) ("'foreign court' means a judicial or other authority competent to control or supervise a foreign proceeding.").  And courts have broadly construed section 101(23) in finding regulatory and judicial bodies to fall within the definition of "foreign court."  *See In re Betcorp Ltd.*, 400 B.R. 266, 284 (Bankr. D. Nev. 2009) (Australian Securities and Investment Commission is an authority competent to control and supervise a voluntary wind-up proceeding within the meaning of sections

b.      The BVI Proceeding is a Foreign "Main" Proceeding.

35.     The BVI Proceeding is a "foreign main proceeding." Section 1502(4) of the Bankruptcy Code defines a foreign main proceeding as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4).  As further set forth below, because the Debtor's COMI is located in the BVI, where the BVI Proceeding is currently pending, the BVI Proceeding is a foreign main proceeding.

36.     Section 1516(c) of the Bankruptcy Code provides that, "absen[t] evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests."  11 U.S.C. § 1516(c).  Because the COMI is undefined in the Bankruptcy Code, this presumption comports with judicial precedent that "generally equates [the COMI] with the concept of 'principal place of business' in the United States."  *In re Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 72 (Bankr. S.D.N.Y. 2011) (quoting *In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 634 (E.D. Cal. 2006)); *see also In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 48 (Bankr. S.D.N.Y. 2008) (using "COMI" and "principal place of business" interchangeably).  Thus, in determining the COMI, courts have considered "any relevant activities, including liquidation activities and administrative functions . . . the location of the debtor's headquarters; the location of those who actually manage the debtor . . . the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and[] the jurisdiction whose law would apply to most disputes."  *See In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 416 (citing *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013)).

---

101(23) and 1502).  The Debtor is also regulated by the FSC (defined above), which has appeared in and is involved in the BVI Proceeding.

37.     Here, since the Debtor has its registered office in the BVI, the BVI is Debtor's presumptive COMI.  11 U.S.C. § 1516(c).  Furthermore, as set forth in the Chilton Declaration, both the Debtor and its Investment Manager were formed in the BVI and had their chief legal counsel in the BVI.  *See* Chilton Declaration ¶ 22.  Moreover, the Debtor is governed by the BVI Mutual Funds Act of 1996 and is regulated by the FSC in the BVI.  Finally, Debtor's liquidation is currently pending in the BVI before the BVI Court and subject to BVI law (namely, the Act).  The BVI is therefore Debtor's COMI, and the BVI Proceeding qualifies as a foreign main proceeding.

**ii.     The Petitioners are Qualifying Foreign Representatives.**

38.     Section 101(24) of the Bankruptcy Code defines "foreign representative" as "a person . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."  11 U.S.C. § 101(24).  The Petitioners satisfy this definition.  First, the Petitioners are individuals and thus "persons" under section 101(41) of the Bankruptcy Code.  Second, in accordance with the Winding-up Order, the Petitioners are authorized to "commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the [Debtor]."  Winding-up Order § 3.

**iii.     The Petition Meets the Requirements of Section 1515.**

39.     Finally, the Debtor satisfies the procedural and evidentiary requirements of section 1515 of the Bankruptcy Code that are necessary for recognition as a foreign main proceeding.  Under Section 1515, a petition must be filed with the court and accompanied by certain statements and documents.  *See* 11 U.S.C. § 1515.  The Petition here, as supported by the Chilton Declaration, meets these requirements.

- 14 -

40.    *First*, the Petitioners properly filed the Petition on behalf of the Debtor in accordance with section 1515(a) of the Bankruptcy Code.

41.    *Second*, as required under section 1515(b) of the Bankruptcy Code, documents evidencing the BVI Proceeding's existence and the Petitioners' appointment are attached as Exhibit A to the Chilton Declaration.

42.    *Third*, the Chilton Declaration includes a statement that the BVI Proceeding is the only foreign proceeding of the Debtor known to the Petitioners, thereby satisfying Section 1515(c)'s requirement to list all known foreign proceedings pending with respect to a debtor.

43.    *Fourth*, the Chilton Declaration includes all information required by Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure, including a corporate ownership statement, a list of all persons authorized to administer the Debtor's assets, a list of all parties to litigation pending in the U.S. in which the Debtor is a party, and a list of all entities, if any, against whom provisional relief is being sought under section 1519 of the Bankruptcy Code.

B.    **The Petitioners' Request Necessary and Appropriate Relief under Section 1521(a).**

44.    Pursuant to section 1521(a) of the Bankruptcy Code, the Petitioners request that this Court enter an order granting certain additional relief as described above. The Court has authority, upon recognizing the BVI Proceeding, to grant "any appropriate relief" under section 1521(a) of the Bankruptcy Code when necessary to effectuate chapter 15's purpose and protect the Debtor's assets or the interests of its creditors and other stakeholders. The additional relief requested in this Petition is "appropriate" because it is necessary to (i) identify and pursue the Debtor's assets in the U.S. (including potential claims), (ii) protect the Debtor's assets from pending or future litigation, and (iii) generally ensure the BVI Proceeding's success.

45.    Under section 1522(a) of the Bankruptcy Code, this Court may only grant

- 15 -

additional relief under section 1521(a) of the Bankruptcy Code if creditors' interests are "sufficiently protected." In making this determination, courts balance the interests of the foreign representatives with the interests of creditors and other affected parties. *CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V. (In re Cozumel Caribe, S.A. de C.V.)*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012); *In re AJW Offshore, Ltd.*, 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013). And in considering creditors' interests, the limitation in Section 1522(a) only applies where "it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." *See* H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 116 (2005).

46. The circumstances here demonstrate that creditors' interests are "sufficiently protected." The BVI Proceeding affords creditors proper treatment because the Debtor's liquidation will treat similarly situated creditors equally. Next, U.S. creditors will not be subject to undue prejudice. And the distribution of the Debtor's assets is similar to what might occur under U.S. law. Finally, even if creditors could prove harm to their interests, the need to ensure the efficiency and success of the BVI Proceeding outweighs that harm.

*[remainder of page intentionally blank]*

WHEREFORE, the Petitioners respectfully request an order, substantially in the form attached hereto as <u>Exhibit A,</u> granting the relief requested herein and such other and further relief as this Court deems just and proper.

Dated: September 24, 2015
New York, New York

**ALSTON & BIRD LLP**

/s/ Martin G. Bunin
Martin G. Bunin
90 Park Avenue
New York, New York 10016
212-210-9400

William S. Sugden
Jonathan T. Edwards
1201 W. Peachtree St.
Atlanta, Georgia 30309-3424

*Attorneys for Petitioners Hadley J. Chilton and John J. Greenwood, in their capacities as Joint Liquidators for Tranen Capital Alternative Investment Fund Ltd. (in liquidation)*

# EXHIBIT A

**[Proposed Order]**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 15 |
| TRANEN CAPITAL ALTERNATIVE ) | |
| INVESTMENT FUND LTD. (IN LIQUIDATION) ) | Case No. 15-12620 |
| ) | |
| Debtor in a Foreign Proceeding. ) | |

## ORDER RECOGNIZING FOREIGN MAIN PROCEEDING
## AND GRANTING ADDITIONAL RELIEF

This Court has held a hearing to consider the official form and verified petitions, filed on September 24, 2015 (together, the "*Petition*") by Hadley J. Chilton and John J. Greenwood of Baker Tilly (BVI) Limited, in their capacities as Joint Liquidators (together, the "*Petitioners*") for Tranen Capital Alternative Investment Fund Ltd. (in liquidation) (the "*Debtor*"), to recognize the winding up and liquidation of the Debtor (the "*BVI Proceeding*") in the Eastern Caribbean Supreme Court in the High Court of Justice in the British Virgin Islands (the "*BVI Court*") as a foreign main proceeding under section 1517 of title 11 of the United States Code (the "*Bankruptcy Code*") and granting certain additional relief under section 1521 of the Bankruptcy Code; due and proper notice of such hearing have been provided; and after due deliberation and sufficient cause appearing therefor, this Court makes the following findings of fact and conclusions of law:

A.    This Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this district under 28 U.S.C. § 1410.

B.    The Petitioners are "persons," as such term is defined in 11 U.S.C. § 101(41).

C.    The Debtor is eligible to be a debtor under 11 U.S.C. § 109(a).

D.      The Petitioners are the Debtor's "foreign representative," as such term is defined in 11 U.S.C. § 101(24).

E.      This chapter 15 case was properly commenced under 11 U.S.C. §§ 1504 and 1515.

F.      The Petitioners have satisfied the requirements of 11 U.S.C. § 1515 and Fed. R. Bankr. P. 1007(a)(4).

G.      The BVI Proceeding is a "foreign proceeding," as such term is defined in 11 U.S.C. § 101(23).

H.      The BVI Proceeding is entitled to recognition by this Court under 11 U.S.C. § 1517(a).

I.      The BVI Proceeding is pending in the country where the Debtor's center of main interests is located, is a "foreign main proceeding," as such term is defined in 11 U.S.C. § 1502(4), and is entitled to recognition as a "foreign main proceeding" under 11 U.S.C. § 1517(b)(1).

J.      The Petitioners are entitled to all the relief provided pursuant to 11 U.S.C. § 1520, without limitation.

K.      The Petitioners are entitled to all relief expressly set forth in 11 U.S.C. §§ 1521(a)–(b).

L.      The relief granted hereby is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted under 11 U.S.C. §§ 1517, 1520, and 1521.

Accordingly, it is hereby **ORDERED**:

- 2 -

1.      The BVI Proceeding is granted recognition as a foreign main proceeding under 11 U.S.C. §§ 1517(a) and 1517(b)(l).

2.      All relief afforded a foreign main proceeding under 11 U.S.C. § 1520 is granted.

3.      In accordance with 11 U.S.C. § 1520(a)(1), 11 U.S.C. §§ 361 and 362 apply to the Debtor and its property that is currently within or may be brought into the territorial jurisdiction of the United States.

4.      The Petitioners are authorized to file notices of this case, the applicability of 11 U.S.C. §§ 361 and 362, and any other such notices the Petitioners deem necessary in any of the pending Litigation or any other proceeding.

5.      The Petitioners are authorized to operate the Debtor's business and exercise the powers of a trustee to the extent provided by 11 U.S.C. § 1520(a)(3), including, for the avoidance of doubt, drawing down on the Debtor's United States bank, securities, deposit, and similar accounts and making distributions in the BVI Proceeding.

6.      In accordance with 11 U.S.C. § 1521(a), all persons and entities, other than the Petitioners and their representatives and agents, are hereby enjoined from (a) commencing or continuing an action or proceeding concerning the Debtor's assets, rights, obligations, or liabilities; (b) executing against any of the Debtor's assets; (c) taking or continuing any act to create, perfect, or enforce a lien or other security interest, setoff, or other claim against the Debtor or its property; (d) transferring, relinquishing, or disposing of any property of the Debtor to any person or entity other than the Petitioners; or (e) declaring or considering the commencement of the BVI Proceeding or the Debtor's chapter 15 case a default under any agreement, contract, or arrangement.

- 3 -

7.      In accordance with section 1521(4) and the Federal Rules of Bankruptcy Procedure (the "**F.R.B.P.**"), the Petitioners are authorized to conduct the examination of witnesses (including any and all parties or person subject to examination under F.R.B.P. 2004), the taking of evidence, or the delivery of information concerning the Debtor's assets, affairs, rights, obligations, or liabilities.

8.      In accordance with 11 U.S.C. §§ 1521(a)(5) and (b), the administration, realization, and distribution of the Debtor's assets located within the territorial jurisdiction of the United States are entrusted to the Petitioners, and the Petitioners are hereby established as the exclusive representatives of the Debtor in the United States.

9.      No action taken by the Petitioners, the Debtor, or their representatives in connection with this chapter 15 case or any adversary proceeding filed by or against the them shall be deemed to constitute a waiver of the rights or benefits afforded such persons under 11 U.S.C. §§ 306 and 1510.

10.     A copy of this order shall be served, within five business days of entry of this order, by fax, e-mail, regular mail, or overnight courier upon all of the Debtor's known creditors and investors, the Office of the United States Trustee, and such other entities as the Court may direct.  Service in accordance with this Order shall constitute adequate and sufficient notice of the terms hereof.

- 4 -

11.     This Court shall retain jurisdiction with respect to the enforcement or interpretation of this Order and any request by any person or entity for relief from the provisions hereof.

Dated: _____, 2015
      New York, New York

                                 _____
                                 UNITED STATES BANKRUPTCY JUDGE