**ALSTON & BIRD LLP**
Martin G. Bunin
90 Park Avenue
New York, NY 10016
(P) 212-210-9400
(F) 212-210-9444

William S. Sugden
Jonathan T. Edwards
1201 W. Peachtree St.
Atlanta, Georgia 30309-3424
(P) 404-881-7000
(F) 404-253-8235

*Attorneys for Petitioners, Hadley J. Chilton and John J. Greenwood, in their capacities as Joint Liquidators for Tranen Capital Alternative Investment Fund Ltd. (in liquidation)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 15 |
| TRANEN CAPITAL ALTERNATIVE ) | |
| INVESTMENT FUND LTD. (IN LIQUIDATION), ) | Case No. 15-12620 |
| ) | |
| Debtor in a Foreign Proceeding. ) | |
| ) | |

**DECLARATION OF HADLEY J. CHILTON IN SUPPORT OF
PETITION FOR ORDER RECOGNIZING FOREIGN MAIN
PROCEEDING AND GRANTING ADDITIONAL RELIEF**

I, Hadley J. Chilton, hereby declare:

1.     I am a licensed insolvency practitioner and head of restructuring at Baker Tilly (BVI) Limited. My colleague, John J. Greenwood, and I were appointed Joint Liquidators (the "***Liquidators***") of Tranen Capital Alternative Investment Fund Ltd. (in liquidation) (the "***Debtor***") by Order of the Eastern Caribbean Supreme Court in the High Court of Justice (the "***BVI Court***") in the British Virgin Islands (the "***BVI***") dated July 10, 2014 (the "***Winding-up***

*Order*"), a copy of which is attached to this declaration as Exhibit A. I submit this declaration in support of our (1) official form and verified petitions (together, the "***Petition***") for an order recognizing the winding up and liquidation of the Debtor in the BVI Court (the "***BVI Proceeding***") as a foreign main proceeding under section 1517 of title 11 of the United States Code (the "***Bankruptcy Code***") and (2) Application Under Fed. R. Bankr. P. 2002(m) and (q) and 9007 for an Order Scheduling Hearing and Specifying Form and Manner of Service of Notice (the "***Application***"). I am competent to testify and, except where otherwise indicated, all facts and statements included in this declaration are based upon my personal knowledge, my review of relevant documents, information provided to me or verified by the Debtor or my opinion based upon my general knowledge of the Debtor.[1]

## I. BACKGROUND

### A. The Debtor's Business

2. Before being placed into liquidation in the BVI, I have reason to believe the Debtor transacted and invested in the secondary life insurance market. The Debtor was formed on February 6, 2008 under the BVI Business Companies Act, 2004, as a limited BVI corporation with its principal place of business in the BVI. The Debtor was organized as a mutual fund under the BVI Mutual Funds Act of 1996 and is regulated by the Financial Services Commission ("***FSC***"). Tranen Capital, Ltd., also a limited BVI corporation (the "***Investment Manager***"), managed the Debtor and its investments.

3. The Liquidators believe that, before being placed into liquidation, the Debtor conducted its U.S. operations out of New York, specifically, 245 Park Avenue, Suite 3900, New York, NY 10167. This location is allegedly where Mr. Karl Anderson, who I believe was the

---

[1] The Liquidators' investigation of the Debtor is ongoing, and the Liquidators currently do not possess all the information regarding the Debtor's trading history, its books and records, and all its remaining assets. This declaration is so qualified.

Chief Investment Analyst of the Investment Manager, conducted substantial business on behalf of the Debtor.

4. According to the Debtor, its strategy was to selectively buy high quality but unwanted or unneeded life insurance policies issued by U.S. life insurance companies and then either (x) sell the policies to institutional purchasers such as banks, pension funds, or hedge funds or (y) hold the best policies until maturity and then collect the death benefit. In short, the Debtor was established to trade in the life settlements market.

5. A life settlement transaction usually involves a third party purchasing the legal ownership of and the beneficial interest (that is, the death benefit) in an in-force life insurance policy. These transactions are intended to provide a policy owner the opportunity to sell the policy to third party purchasers, such as the Debtor, for more money than would be received upon surrender of the policy at that time.

6. Unless contracted or agreed otherwise, the purchaser becomes the new legal owner of the policy and therefore can: (a) retain the policy, pay the monthly premiums, and receive the death benefit; or (b) resell the policy on the secondary market for a higher purchase price, thus earning a return on invested funds.

7. The Debtor has approximately 200 investors with approximately $184,000,000 of invested capital. The Debtor also has approximately 23 U.S.-based creditors.

**B.    Events Leading to the BVI Proceeding**

8. The Debtor, its Investment Manager, Kenneth A. Langaard and Arthur L. Bowen (Langaard and Bowen being former directors of the Debtor and its Investment Manager), and certain service providers to the Debtor and related parties, including Karl and Alex Andersen, Brock Bagley, Randy Bagley, Donald Trudeau, and the Leo Group LLC, have been and are

parties to various lawsuits in the U.S., alleging a variety of irregularities in connection with the Debtor, its management, and its affairs.

9. These lawsuits include: (i) *Stavanger Holdings Ltd. et al. v. Tranen Capital Alternative Investment Fund Ltd. et al.*, No. 12-cv-646 (S.D. Ind. May 11, 2012) (the "**Stavanger Litigation**"); (ii) *Longterm Partners Inc. v. Tranen Capital Alternative Investment Fund Ltd.*, No. 12-cv-1624 (D. Conn. Nov. 15, 2012) (the "**Longterm Partners Litigation**"); (iii) *Arent Fox LLP v. Tranen Capital Ltd.*, No. 11-cv-7591 (D.N.J. Dec. 3, 2013) (the "**Arent N.J. Litigation**"); (iv) *Tranen Capital Alternative Investment Fund Ltd. v. Sovereign Bank et al.*, No. 11-cv-7591 (D.N.J. Dec. 29, 2011) (the "**Sovereign Bank Litigation**"); (v) *Arent Fox LLP v. Tranen Capital Ltd.*, No. 13-cv-6126 (S.D.N.Y. Aug. 30, 2013) (the "**Arent N.Y. Litigation**"); (vi) *McWealth Management v. Landgaard et al.*, No. 13-cv-2564 (D. Minn. Sept. 18, 2013) (the "**McWealth Litigation**"); (vii) *Richard W. Barry, as Chapter 11 Trustee for the estates of Liberty State Benefits of Delaware Inc., et al. v. Tranen Capital Alternative Investment Fund Ltd. et al.*, No. 11-53420 (Bankr. D. Del. Oct. 17, 2011) (the "**Barry Litigation**"); (viii) *Vision En Analisis Y Estrategia S.A. D.E. C.V. v. Karl Anderson, et al.*, No. 14-cv-08016 (S.D.N.Y. Nov. 13, 2014) (the "**Vision Litigation**"); (ix) *Tranen Capital Alternative Investment Fund, Ltd. v. Andrew Alberti*, Summons with Notice filed on May 29, 2015 in the Supreme Court of the State of New York, County of Westchester (the "**Alberti Litigation**"); and (x) *Britannia v. Tranen Capital Alternative Investment Fund Ltd. et al.*, No. 15-cv-3648 (S.D.N.Y. May 11, 2015) (the "**Britannia Litigation**," together with the Stavanger Litigation, Longterm Partners Litigation, Arent N.J. Litigation, Sovereign Bank Litigation, Arent N.Y. Litigation, McWealth Litigation, Barry Litigation, Vision Litigation, and the Alberti Litigation, the "**Litigation**"). The Debtor is named as a party in some, but not all, of these civil actions.

10. In certain of these lawsuits, the plaintiffs allege that the Debtor depended on a fraudulent scheme to generate its cash flows and that the directors and certain service providers to the Debtor misappropriated and made personal use of the invested funds rather than applying such funds for investment purposes.

11. Indeed, certain of the Debtor's investors have alleged that the directors and managers of the Debtor, including the Investment Manager and other insiders, used the invested funds, proceeds, and death benefits to, among other things: (a) purchase real estate for their personal benefit; (b) purchase luxury automobiles for their personal benefit; (c) purchase or lease a private aircraft; and (d) otherwise lead lavish lifestyles, including taking luxurious international vacations.

12. And according to a 2013 KPMG audit, the Debtor's management team alledgedly: (a) redeemed their own shares while postponing or delaying redemption requests from investors; (b) loaned themselves money from the Debtor's assets; (c) could not account for a $10,000,000 receivable; (d) made a "loan to affiliate" of $16,000,000; and (e) caused multiple policies to lapse, which materially harmed the Debtor and its assets.

13. In or around the early part of 2012, the Debtor's investors began questioning the Debtor's operations, its use of invested funds, and the strength and quality of its assets. This questioning began because the Debtor started denying or delaying investors' redemption requests, citing liquidity concerns. In or around July 2012, the Debtor ceased making premium payments on policies it then owned, causing those policies to lapse. Around the same time, Mr. Anderson and his company, Stavanger, parted ways with the Debtor and its Investment Advisor and later sued the Debtor and Investment Advisor for allegedly earned but unpaid commissions. *See generally* Stavanger Litigation.

14. On May 30, 2013, the Debtor officially announced that its board of directors had determined to suspend the payment of redemptions, citing: (1) a large number of redemption requests received over a short period; (2) difficulty in quickly selling insurance policies without adverse consequences to the Debtor's assets; and (3) the resulting delay of cash flow due to the theft of a death benefit due the Debtor. The Debtor's board of directors also immediately suspended trading on the Irish Stock Exchange.

15. Pursuant to an order of the United States District Court for the Southern District of Indiana, entered in the Stavanger Litigation on or around January 15, 2014, a settlement agreement against the Debtor and related parties was approved, and control of the Debtor was transferred to an independent recovery company, Delta Group Limited ("**Delta**").[2] Because of that appointment, Delta engaged with certain service providers to the Debtor to obtain the Debtor's books and records and allow forensic analysis to be undertaken. That forensic analysis indicated that the Debtor was insolvent and that a liquidator should be appointed.

16. Thereafter, on July 4, 2014, the Debtor filed an application with the BVI Court to appoint the Liquidators, which the BVI Court granted in the Winding-up Order. Pursuant to the Winding-up Order, the Liquidators have all the powers set forth in Section 186 and Schedule 2 of the Insolvency Act 2003 (as amended), including other enumerated powers set forth in the Winding-up Order such as the "power to commence, continue, discontinue or defend any action or other legal proceedings in the name of and on behalf of the [Debtor]." Winding-up Order § 3.

C.  **The Chapter 15 Proceeding**

17. The Winding-up Order empowers Mr. Greenwood and me, in our capacity as Liquidators, to take necessary actions to protect the Debtor's assets and prevent any further

---

[2] 1,000 Class A Management Shares were transferred from Kenneth Landgaard via a stock transfer form on January 15, 2014.

diminution in value of its assets. Specifically, the BVI Proceeding has conferred a statutory moratorium on claims against the Debtor, and the Liquidators believe it is necessary to institute this proceeding to protect the Debtor's remaining assets.

18. The BVI Proceedings are of universal effect and are designed to provide the most efficient and equitable mechanism for recovering the Debtor's assets and prosecuting appropriate litigation to increase the liquidation estate for the benefit of creditors and investors. Parties holding the Debtor's property are required, by BVI law, to deliver the Debtor's property to the Liquidators and to otherwise comply with the Liquidators' requests for information regarding the Debtor. The object of the Winding-up Order in dealing with an international insolvency is to ensure, insofar as it properly can, that the worldwide assets of the Debtor and the worldwide claimants to those assets are treated on a common basis. BVI law prescribes a statutory scheme to distribute the Debtor's assets which, I understand, is similar to the distribution priorities under U.S. law. Among other things, under BVI law, a secured creditor is generally entitled to realise upon the property in which it has a security interest and unsecured creditors are entitled to a distribution of the Debtor's remaining property, after payment of expenses of the liquidation, on a ratable basis. Thereafter, shareholders and other contributories are entitled to the residue of any remaining assets. Furthermore, the Liquidators are charged with examining and adjudicating claims that are filed against the Debtor and act as agents of the BVI Court for these purposes and are supervised in their activities by the BVI Court.

19. To effectuate these purposes, I have submitted the Petition and related papers to have the BVI Proceeding recognized by this Court as a foreign main proceeding and to recognize Mr. Greenwood and me as "foreign representatives" as defined in section 101(24) of the Bankruptcy Code. As detailed in the Petition, I believe that there is a compelling case both for

recognition of the BVI Proceedings and for recognition of the BVI Proceeding as a foreign main proceeding.

20. The need for recognition under chapter 15 of the Bankruptcy Code is clear. Based upon my investigation to date, the Liquidators believe the Debtor may have claims against numerous U.S. persons, including the Debtor's directors, managers, and certain service providers located in the U.S. arising from material irregularities in relation to the Debtor, its management, and its affairs, including certain of the claims and allegations identified in the Litigation. Certain parties, including parties located in the United State, have not, to date, been fully cooperative in providing documents and other information to the Liquidators regarding the Debtor's pre-liquidation conduct. Therefore, recognition of the BVI Proceedings will provide the Liquidators with an ability to compel U.S. parties to cooperate with their investigation in a U.S. court. Additionally, I understand that certain statutes of limitations and other applicable deadlines may be tolled pursuant to section 108 of the Bankruptcy Code. This tolling will afford the Liquidators an opportunity to conclude their investigations and properly and timely assert claims against third parties who may have engaged in wrongful conduct against the Debtor.

21. Additionally, the Debtor is also the owner, directly or indirectly, of certain lapsed insurance policies, which the Liquidators may be able to revive under applicable law. According to the Debtor's private placement memorandum, many, if not all, of these policies are issued by U.S. life insurance companies. For these reasons, recognition of the BVI Proceeding under chapter 15 of the Bankruptcy Code is appropriate.

22.    Further, it is appropriate to recognize the BVI Proceedings as "foreign main proceedings." The Debtor's center of main interests ("*COMI*") is the BVI. Both the Debtor and its Investment Manager are BVI companies. The Debtor's and the Investment Manager's registered office is at P.O. Box 961, 30 De Castro Street, Road Town, Tortola, British Virgin Islands. The Debtor's legal counsel, prior to being placed into liquidation, was Maples and Calder located in the BVI. The Debtor is governed by the BVI Mutual Funds Act of 1996 and is therefore regulated by the FSC in the BVI.

23.    Similarly, the liquidation of the Debtor is governed by the BVI Insolvency Act 2003 (as amended) and is being overseen by the BVI Court. The distribution of the Debtor's assets will therefore be governed by BVI law and the BVI Court. And the law applicable to most disputes is likely BVI law. Additionally, since the commencement of the BVI Proceeding, the Liquidators, located in the BVI, have managed the Debtor, the Debtor's accounting is conducted in the BVI under the Liquidators' supervision, and the Debtor's accounts are located in the BVI. Thus, while the Debtor's investors are global in scope, including investors in Asia, the United States, Mexico, and Europe, the center of the Debtor's activities during its liquidation, including the collection and distribution of the Debtor's assets and resolution of claims against the Debtor.

24.    Recognition as a foreign main proceeding will also provide certain important additional benefits. As set forth above, the Debtor has been named as a defendant in various lawsuits. Upon recognition as a foreign main proceeding, the Debtor will benefit from the breathing spell afforded by the automatic stay and will allow the Liquidators time to liquidate the Debtor's assets for the benefit of all its stakeholders.

25.    Finally, as stated in the Petition, I believe that recognizing the BVI Proceeding as a foreign main proceeding is consistent with the purposes of chapter 15 of the Bankruptcy Code

and the public policy of the U.S. Thus, I believe the relief requested in the Petition is in the best interests of the Debtor, its creditors, investors, and other parties in interest.

26. Contemporaneous with the filing of this declaration, I will also file the Application to (i) set the date and time (New York Time) for the hearing (the "***Recognition Hearing***") on the relief sought in the Petition, (ii) set the date and time (New York Time) as the deadline by which any responses or objections to the Petition must be received (the "***Objection Deadline***"), (iii) approve the form of notice of the Recognition Hearing and the Objection Deadline (the "***Recognition Hearing Notice***"), and (iv) approve the manner of service of the Recognition Hearing Notice.

27. I can attest that the Debtor has many investors and creditors and other parties in interest who need to receive the Recognition Hearing Notice. The Recognition Hearing Notice provides several efficient ways for any party receiving such notice to obtain copies of pleadings and papers that I may file in this chapter 15 case. At the same time, I, as the foreign representative, respectfully submit that I should not be over-burdened with the significant costs associated with copying and mailing all the various documents filed in this case to the entire matrix of putative creditors and other parties that already received notice in connection with the BVI Proceeding. Thus, I believe that the relief requested in the Application is necessary and appropriate and is in the best interests of the Debtor, its creditors and investors, and other parties in interest.

## II. STATEMENT PURSUANT TO BANKRUPTCY CODE SECTION 1515(C)

28. I have been advised that section 1515(c) of the Bankruptcy Code provides "[a] petition for recognition shall . . . be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative." 11 U.S.C. §

1515(c). In accordance with this section, I hereby declare the BVI Proceeding is the only foreign proceeding, as I understand such term is defined in section 101(23) of the Bankruptcy Code, pending with respect to the Debtor that is known to the Liquidators.

### III. INFORMATION REQUIRED BY BANKRUPTCY RULE 1007(A)(4)

29. I have also been advised that Federal Rule of Bankruptcy Procedure 1007(a)(4) provides:

> [A] foreign representative ... shall file with the petition: (A) a corporate ownership statement containing the information described in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is sought.

Accordingly, I respectfully state:

30. <u>Corporate Ownership Statement</u>.  The following corporations or persons directly or indirectly own 10% or more of the Debtor's equity interests: JTSB STB HSBC 24 Life Settlement Fund 2011-10 and JTSB STB 24 Life Settlement Fund 2011-04.

31. <u>Persons/Bodies Authorized to Administer the BVI Proceeding</u>.  Pursuant to the Winding-up Order, Mr. Greenwood and I were appointed as Liquidators by the BVI Court.  No other persons or entities are authorized to administer the foreign proceedings of the Debtor.  Our mailing address is Tropic Isle Building, Nibbs Street, P.O. Box 650, Road Town, Tortola, VG 1110, British Virgin Islands.

32. <u>Pending Litigation/Provisional Relief</u>.  Other than the Litigation listed above, I am unaware of any litigation pending in the U.S. to which the Debtor is a party.  The Liquidators have not sought provisional relief against any entities.

### IV.   **BVI CONFIDENTIALITY**

33.   Under BVI law and in accordance with customary practice in the British Virgin Islands, investor information in a BVI company is not public information and should be kept confidential.

34.   For example I understand that under Part V, Division 2, of The BVI Business Companies Act, 2004, the Register of Members (*i.e.*, the Confidential Shareholder Information), Register of Directors and all Minutes and Resolutions by the company are kept only with the Registered Agent and do not appear on the public record. *See generally* The BVI Business Companies Act, 2004, §§ 96–102.

35.   And I also understand that under section 230 of the BVI Insolvency Act, 2003, disclosure of the Debtor's documents, including the identity of the Debtor's investors, requires an order of the BVI Court. *See generally* BVI Insolvency Act, 2003, § 230.

I declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that, based on my knowledge, information, and belief as set forth herein, the foregoing is true and correct.

Dated: September 24, 2015

                                             Respectfully Submitted,

                                             
                                             _____
                                             Hadley J. Chilton, solely in his capacity as a Joint Liquidator and Foreign Representative for Tranen Capital Alternative Investment Fund Ltd. (in liquidation)

# EXHIBIT A

# [WINDING-UP ORDER]

THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
VIRGIN ISLANDS
COMMERCIAL DIVISION
CLAIM NO: BVIHC (COM) 2014/78



IN THE MATTER OF THE INSOLVENCY ACT 2003
IN THE MATTER OF TRANEN CAPITAL ALTERNATIVE INVESTMENT FUND LTD.

TRANEN CAPITAL ALTERNATIVE INVESTMENT FUND LTD.

Applicant

---

Order

---

**BEFORE:**   The Honourable Justice Edward Bannister QC

**DATED:**    10 July 2014

**ENTERED:**  11 July 2014

**UPON** hearing Robert Nader of Forbes Hare on behalf of the Applicant and Lynette Ramoutar on behalf of the Financial Services Commission

**AND UPON** reading the Applicant's originating application filed on 4 July 2014 to appoint joint liquidators over the Applicant

**AND UPON** reading the affidavits of Lawrence Edwards and Shane Baptiste and the exhibits thereto

**IT IS ORDERED THAT:**

1. Tranen Capital Alternative Investment Fund Ltd. (the "**Company**") be wound up in accordance with the provisions of the Insolvency Act 2003.

2. Hadley Chilton and John Greenwood of Baker Tilley (BVI) Limited, Tropic Isle Building, Road Town, Tortola, British Virgin Islands be appointed as joint liquidators (the "Liquidators") of the Company without security.

3. In addition to all other powers, the Liquidator have all the powers set out at Section 186 and Schedule 2 of the Insolvency Act 2003 (as amended), including those set out below which (other than the powers set out in subparagraphs (i) to (v) below for which the Court's sanction shall be required) may be exercised without the sanction of the Court:

    (i) the Liquidators have the power to pay any class of creditors in full;

    (ii) the Liquidators have the power to make a compromise or arrangement with creditors or persons claiming to be creditors, or having or alleging that they have any claim against the Company, whether present or future, certain or contingent, ascertained or not;

    (iii) the Liquidators have the power to compromise, on such terms as may be agreed

    (a) calls and liabilities to calls, debts and liabilities capable of resulting in debts, and claims, whether present or future, certain or contingent, ascertained or not, subsisting or supposed to subsist between the Company and any person; and

    (b) questions in any way relating to or affecting the assets or the liquidation of the Company;

(c) and take security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect of it;

(iv) the Liquidators have the power to commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the Company;

(v) the Liquidators have the power to carry on the business of the Company so far as may be necessary for its beneficial liquidation;

(vi) the Liquidators have the power to sell or otherwise dispose of the property of the Company;

(vii) the Liquidators have the power to do all acts and execute, in the name and on behalf of the Company, any deeds, receipt or other document;

(viii) the Liquidators have the power to use the Company's seal;

(ix) the Liquidators have the power to prove, rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any member or past member for any balance against his estate, and to receive dividends, in the bankruptcy, liquidation, insolvency, sequestration or in respect of that balance, as a separate debt due from the bankrupt or insolvent, and rateably with the other separate creditors;

(x) the Liquidators have the power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the Company with the same effect with respect to the Company's liability as if the bill or note had been drawn, accepted, made or endorsed by or on behalf of the Company in the course of its business;

(xi) the Liquidators have the power to borrow money, whether on the security of the assets of the Company or otherwise;

(xii) the Liquidators have the power to take out in their official name letters of administration to any deceased member or past member or debtor, and to do any other act necessary for obtaining payment of any money due

      from a member or past member or debtor, or his estate, that cannot conveniently be done in the name of the Company.

  (xiii)    the Liquidators have the power to call meetings of creditors or members for:

      (a)    the purpose of informing creditors or members concerning the progress of or matters arising in the liquidation;

      (b)    the purpose of ascertaining the views of creditors or members on any matter arising in the liquidation; or

      (c)    such other purpose connected with the liquidation as the Liquidator considers fit.

  (xiv)    the Liquidators will be at liberty to appoint a solicitor, accountant or other professionally qualified persons in the Virgin Islands and/or elsewhere to assist them in the performance of their duties on such terms as they think fit and to remunerate them out of the assets of the Company as an expense of the liquidation;

  (xv)    the Liquidators have the power to appoint an agent to do any business that the Liquidators are unable to do themselves, or which can be more conveniently done by an agent; and

  (xvi)    all the powers bestowed upon the Liquidators may be exercised by them within and outside the Virgin Islands.

4.    The costs of and incidental to this application be paid out of the assets of the Company as a properly incurred cost or expense of the liquidation.

5.    (1) This order, unless discharged on application made for that purpose as provided for in this paragraph shall come into effect upon:

    (a) The expiration of seven (7) clear days after the day upon which the last of the matters stipulated for in sub-paragraph (2) of this

paragraph has been carried out; or

(b) If within the period specified in sub-paragraph (1)(a) an application is made to vary or discharge this order, then upon the disposal of that application.

(2) The matters referred to in sub-paragraph (1) above are:

(a) Notice having been given by the Applicant by electronic or other means to all known creditors and members of the Applicant of the making of this order; and

(b) Notice of this order having been given to the Financial Services Commission.

6. The advertising requirements at s.165 of the Act are dispensed with.

7. Notwithstanding the matters set out at paragraph 5 above, pursuant to the terms of s.49A(1)(a) of the Financial Services Commission Act, the affidavit of Shane Baptiste, filed herein on 10 July 2014, and the exhibit thereto (together the "FSC Documents") be sealed. With the exception that the Applicant and the Applicant's legal advisers are entitled to see the FSC Documents, the FSC Documents shall not be provided to any other persons or used for any other purpose without the leave of the Court.

**BY THE COURT**

*[signature]*

Dep. **REGISTRAR**